IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SERGIO CONTRERAS and ALBERTO | § | |
| SANCHEZ, on Behalf of Themselves and | § | |
| Others Similarly Situated, | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 1:16-CV-883 |
| | § | |
| LAND RESTORATION LLC and | § | |
| LAND RESTORATION HOLDINGS LLC | § | JURY TRIAL DEMANDED |
| Defendants. | § | |

**MOTION FOR CONDITIONAL CERTIFICATION**
**OF COLLECTIVE ACTION AND NOTICE TO CLASS**

In this action under the Fair Labor Standards Act ("FLSA"), plaintiffs Sergio Contreras and Alberto Sanchez request conditional certification of a class of similarly situated current and former employees ("Class Members") of defendants Land Restoration LLC and/or Land Restoration Holdings LLC  (collectively "Land Restoration" or "Defendants"), and approval to send notice to the class.

## I.  INTRODUCTION

Contreras, Sanchez and the Class Members worked as manual laborers for Defendants, a business that does residential and commercial landscaping design, construction and maintenance, often for luxury homes and properties. (*See* Exhibits A, Sergio Contreras Declaration, and B, Alberto Sanchez Declaration, at ¶ 1, *see also* http://landrestorationtx.com/project-gallery/). While these workers were entitled to overtime pay under federal law, Land Restoration deliberately failed to pay overtime as required, instead paying either a straight hourly rate or a per day rate regardless of how many hours were worked.  Exs. A and B at ¶ 3.

1

The FLSA allows Contreras and Sanchez to bring a collective action on behalf of themselves and those similarly situated and provides for this Court to grant conditional certification of the class and for notice to be sent to Class Members advising them of their rights. At this stage of the case, "[b]ecause the court has minimal evidence, this determination is made using a fairly lenient standard." *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510 (W.D. Tex. 2015) (Pitman, J.) (*citing Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995)).   Plaintiffs are only required to show that they are "similarly situated" to other Class Members, and they easily meet this standard.   *See id.*; *see also Page v. Crescent Directional Drilling, L.P.*, No. 5:15-CV-193-RP, 2015 U.S. Dist. LEXIS 182322, at *4 (W.D. Tex. Dec. 10, 2015) (Pitman, J.).   This motion requests the Court authorize notice to effectuate the purposes of the FLSA to help low-wage workers be paid as they are entitled.

## II.  LEGAL STANDARDS AND AUTHORITY

### 1.    This Court Uses The Two Stage Approach For FLSA Collective Actions.

An employee can bring an action for violating the overtime provisions of the FLSA as an individual or as a collective action on behalf of herself and "other employees similarly situated." *Page*, 2015 U.S. Dist. LEXIS 182322 at *3 (*citing* 29 U.S.C. § 216(b) ). In a collective action, the plaintiff may seek "conditional class certification" from the court, which permits the plaintiff to "send [a] court-approved written notice to employees, who in turn become parties to [the] collective action only by filing written consent with the court." *Id.* (citing *Genesis Healthcare Corp. v. Symczyk*, ___ U.S. ___, 133 S. Ct. 1523, 1527, 185 L. Ed. 2d 636 (2013)).

While the Fifth Circuit has declined to adopt a specific test to determine when a court should conditionally certify a class, this Court and the majority of courts within this circuit have adopted the two-stage approach articulated in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J.

1987). *Id.*[1]  (citations omitted).  The two stages of the *Lusardi* approach are the "notice stage" and the "decertification stage."  *Id.* (*citing Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003)).

##  2.   Conditional Certification Standard Is Lenient And Requires Only That Claims Be Similar.

At the notice stage, the district court "determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." *Id.* at *4 (*citing Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010)).  At the notice stage, "the conditional class certification is largely based on the allegations set forth in the pleadings and affidavits and, for this reason, is governed by a lenient standard requiring 'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *Joaquin v. Hinojosa*, No. A-15-CV-787-LY, 2016 U.S. Dist. LEXIS 166861 at *4-5 (W.D. Tex. 2016) (Yeakel, J.) (*citing Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)).  At the notice stage, "[t]he positions need not be identical, but similar."  *Pedigo v. 3003 South Lamar, LLP*, 666 F.Supp.2d 693, 698 (W.D. Tex. 2009) (Nowlin, J.) (citation omitted). Additionally at the notice stage, courts generally refuse to consider a defendant's arguments on the merits.  *Joaquin ,*2016 U.S. Dist. LEXIS 166861 at *5; *see also Page*, 2015 U.S. Dist. LEXIS 182322 at *4, *6-8  (court evaluates merits at second, decertification stage).

---

[1]*See also e.g. Tamez v. BHP Billiton Petroleum (Ams.), Inc.,* No. 5:15-CV-330-RP, 2015 U.S. Dist. LEXIS 156082 at *4, 2015 WL 7075971 (W.D. Tex. Dec. 10, 2015) (Pitman, J.); *Moore v. Performance Pressure Pumping Servs.,* No. 5:15-CV-432-RP, 2015 U.S. Dist. LEXIS 184035 at *4 (W.D. Tex. Aug. 24, 2015) (Pitman, J.).

If the court finds that the putative class members are similarly situated, then conditional certification is warranted and the plaintiff will be given the opportunity to send notice to potential class members. *Page*, 2015 U.S. Dist. LEXIS 182322 at *4. After the class members have opted in and discovery is complete, the defendant may then file a decertification motion—the second stage of the *Lusardi* approach—asking the court to reassess whether the class members are similarly situated.   *Id. (citing Mooney*, 54 F.3d at 1214).   At that point the Court will fully evaluate the merits of the class certification.  *Id.*

> 3.    <u>**Plaintiffs Satisfy Their Minimal Burden and Request The Court to Order Notice.**</u>

Both the Plaintiffs' Original Complaint (Dkt. #1) and the sworn declarations of the Contreras and Sanchez (Exs. A and B) show that Plaintiffs and the Class Members are "similarly situated" and meet the lenient standard for notice to the class.  Plaintiffs and Class Members performed similar job duties, were subject to the same wage policies, and consequently were subject to the same FLSA violations.

Plaintiffs Contreras and Sanchez and the other Class Members worked for Defendants doing manual labor in landscaping and construction at luxury properties working, including digging holes, trenches, planting trees and plants, installing lawn turf, loading and unloading trucks, and working on various landscape and construction jobs.  Exs. A and B at ¶ 2.  Plaintiffs estimate that at any one time, there were approximately 10 to 20 manual laborers in landscape and construction.  Exs. A and B at ¶ 2.  Based on their job duties, Plaintiffs Contreras, Sanchez and the other manual laborers were obviously entitled to overtime pay.   Nonetheless, Land Restoration failed to pay overtime rates to its workers for hours worked over 40 hours a week. Exs. A and B at ¶ 3; *see also* Plaintiffs' Original Complaint (Dkt. #1) at ¶ 12.

During the period of time in which Sanchez worked and the majority of time in which Contreras worked, Land Restoration paid its workers an hourly rate that did not change, even if the workers worked more than 40 hours a week.   Exs. A and B at ¶ 3; Plaintiffs' Original Complaint at ¶ 12.   In approximately the last two months of Contreras' employment, Land Restoration switched to paying a daily rate to all of its manual laborers, no matter how many hours a day or a week that the workers worked. Ex. A at ¶ 3; Plaintiffs' Original Complaint at ¶ 12.  Plaintiffs have met their burden for notice to the potential opt-in plaintiff Class Members.

**4.      Similarly Situated Potential Opt-In Plaintiffs Exist**

Although not a statutory requirement,[2] Plaintiffs have identified additional workers who performed similar duties for the Defendants, were paid by in the same manner as Plaintiffs, and were similarly denied the protections of the FLSA.  Exs. A and B at ¶¶ 3-6, Plaintiffs' Original Complaint at ¶¶ 15-21.

## III. REQUESTED CERTIFICATION AND NOTICE

**1.      Requested Conditional Certification.**

Plaintiffs request the Court to conditionally certify a class defined as:

Defendants' current and former employees who worked as manual laborers and were paid an hourly or daily rate at any time during the three year period before the filing of this lawsuit.[3]

---

[2]*Dreyer v. Baker Hughes Oilfield Operations, Inc.,* No. CIV.A. H-08-1212, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008); *Black v. SettlePou, P.C.,* 2011 WL 609884, at *3 (N.D. Tex. Feb. 14, 2011); *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 995 (E.D. Tex. 2011) (where Plaintiffs specifically identified just one potential plaintiff); *Tolentino v. C & J Spec–Rent Servs. Inc.,* 716 F. Supp. 2d 642, 653 (S.D. Tex. 2010) (finding two declarations of similarly situated individuals and complaint sufficient to demonstrate existence of employees who would opt in).

[3]Given an allegation of willful violation, as in this case, this Court and others certify misclassification cases and send notice to the putative class using a three-year statute of limitations. *Page* 2015 U.S. Dist. LEXIS 182322 at *7 (citations omitted).

5

2.     **Notice Should Effectuate Goal of FLSA To Help Defendants' Low Wage, Immigrant Workers**.

The "prime purpose" of the FLSA is "to aid the unprotected, unorganized and lowest paid of the nation's working population." *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945).  Accordingly, the district court's duty is to ensure "the best notice practicable under the circumstances." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1304 n. 2 (9th Cir. 1990).  As the Supreme Court has held, district courts in FLSA collective actions have "a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170-71 (1989).

3.     **The Likelihood Of Coercion and Retaliation In This Case Merit Special Attention.**

The Class Members in this case are almost all non-English-speaking immigrant workers who earn low wages, are relatively transient, moving as necessary to find employment, and have legitimate fears of retaliation for asserting their rights under the FLSA to obtain owed, but unpaid, overtime compensation.  Plaintiffs Contreras and Sanchez explain in their declarations that they have talked with some of the workers who still work for Defendants but do not want to be identified because they are afraid of retaliation.  Exs. A and B at ¶ 7.  The workers are afraid of joining this lawsuit because they are afraid they will be fired or retaliated against.  Exs. A and B at ¶ 7.  Some of the workers may also be scared to join this lawsuit because of possible issues about their residency or citizenship and don't want to be turned in or reported because they participate in this lawsuit.  Exs. A and B at ¶ 7.

The potential for abuse, coercion and retaliation is readily apparent in any case where an employer discusses with its current low-wage, immigrant workers their intentions to join a lawsuit or participate in a potential settlement against that employer. In this case, counsel for Defendants has stated that Land Restoration has already talked with all of its employee Class Members about this suit. Exhibit C, Robert Schmidt Declaration at ¶3. Additionally, Plaintiff Contreras has knowledge that after this lawsuit was filed, Defendants spoke with employees to investigate and find out who was involved in the lawsuit. Ex. B at ¶ 7. According to counsel for Defendants, Defendants have allegedly found out through discussions with its employees that none of its employees want to opt in to the suit, allegedly because they "do not like" the named Plaintiffs. Ex. D at ¶3.

The fact that Defendants have already spoken to Class Members *ex parte* about this lawsuit and have allegedly obtained statements from all of its employees that they will not join this lawsuit raises real concerns that this Court can and should address. Defendants' claim that its low-wage employees will not participate in this suit, which could result in a payment of a relatively significant amount of money[4] to them because the employees allegedly "do not like" the named plaintiffs is suspect and clearly suggests the likelihood of coercion[5] – whether

---

[4]Hypothetically if a Class Member worked 10 hours of overtime a week (*see* Plaintiff's Original Complaint ¶12) and was paid $10 an hour but no overtime, over a three year period the amount of actual unpaid overtime would be approximately $7,500. The FLSA provides for "an additional equal amount as liquidated damages," 29 U.S.C. § 216(b), making total possible damages of $15,000. This is a hypothetical rough estimate only and does not include any compensation for time worked but not recorded, attorneys fees or other possible factors.

[5]In a union organization case, the Supreme Court recognized the heightened potential for coercion in the employer-employee relationship, noting that employer communications "must take into account the economic dependence of the employees on their employers, and the necessary tendency of the former, because of that relationship, to pick up intended implications of the latter that might be more readily dismissed by a more disinterested ear." *NLRB v. Gissel Packing Co.*, 375 U.S. 575, 580 (1969).

7

intentional or unintentional – by Defendants, as well as the employees' fear of retaliation. Defendants' interests in this litigation are adverse to and different from the interests of its employee Class Members.  While it is unknown at this point what specifically Land Restoration has said to its employees about the suit, it is reasonable to expect that Land Restoration's communications reflect its own interests.  Moreover, Defendants' communications with its employees about the suit and any alleged decisions by Class Members were obviously made before the Class Members received a Court approved notice giving the workers an explanation of their legal rights.

Finally, Defendants' counsel has stated that Defendants intend to pay unspecified amounts to its employees relating to unpaid overtime, separate from this lawsuit and not as a part of any possible settlement of this suit.  Ex. D at ¶ 4.   Defendants' counsel has stated that Defendants have not yet made any such payments.  Ex. D at ¶4.  It is unknown whether Land Restoration have told Class Members about its possible intentions to make payments apart from this lawsuit.   Ex. D at ¶ 4.  Nonetheless, the potential for abuse and confusion regarding such vague claims of intentions is clear.  Unilateral promises or suggestions by Defendants of such payments are unenforceable.  Moreover, a promise or suggestion by Defendants of a payment to discourage Class Members from joining the suit or in exchange for an agreement to not join the lawsuit would clearly be improper.  *See e.g. Pacheco v. Aldeeb*, 127 F.Supp. 3d 694, 698 (W.D. Tex. 2015) (employer improperly discouraged employees from joining suit and used influence as employer to discourage participation by offering raise in exchange for dropping claims and offering to pay employee to persuade other to dismiss claims).

In light of the circumstances of this case, Plaintiffs request this Court issue notice in a way that serves the goals of the FLSA, that reaches the Class Members in the most effective way, and that addresses fears and concerns relating to coercion and retaliation.

**3.      Notice Overview.**

Plaintiffs seek an order and notice from this Court very similar to the order and notice recently issued on November 28, 2016 by Judge Lee Yeakel in *Joaquin*, 2016 U.S. Dist. LEXIS 166861 at *10-11 and Exhibit D, attached.  Plaintiffs request that this Court require Defendants to disclose the names, last known addresses, email addresses, and telephone numbers of the above-defined Class Members.  *See e.g. Page*, 2015 U.S. Dist. LEXIS 182322 at *8; *Joaquin*, 2016 U.S. Dist. LEXIS 166861 at *8.  Plaintiffs request this information be provided within 10 days from the entry of the Court's Order and in usable electronic form (Word, Word Perfect or Excel) to reduce any delays in sending out the Notices.  *Joaquin*, 2016 U.S. Dist. LEXIS 166861 at *8.  Plaintiffs ask the Court to approve the proposed Notice and Consent Form attached as Exhibit E to be distributed in both English and Spanish to the Class Members via mail, email, Facebook, included in current employees paychecks and posted at Defendants' workplace. Plaintiffs seek a sixty (60) day opt-in period measured from the date notice is mailed.

**4.      Mail,  Email and Facebook.**

Plaintiffs request the notice be distributed via mail, email, and Facebook.  As this Court said in *Page* and *Rodriguez v. Stage 3 Separation, LLC*, "[e]mail is not the wave of the future; [it] is the wave of the last decade and a half." *Page*, 2015 U.S. Dist. LEXIS 182322 at *9-10. This Court and numerous courts in this district have found that notice via email is appropriate in FLSA collective actions.  *Id., see also e.g. Joaquin*, 2016 U.S. Dist. LEXIS 166861 at *8.  With the prevalence of social media, Courts have also approved notice via Facebook or other social

media.  *E.g., Joaquin*, 2016 U.S. Dist. LEXIS 166861 at *9; *Pacheco,* 2015 WL 1509570 at *8;
*Woods v. Vector Mktg. Corp.*, C-14-0264 EMC, 2015 WL 1198593, at *5 (N.D. Cal. Mar. 16,
2015) (finding Facebook "a particularly useful form of ensuring actual notice").  Plaintiffs also
request the ability to distribute via mail, email and Facebook a second, identical copy of the
notice/consent form to the Class Members reminding them of the deadline for the submission of
consent forms.  This Court, like others has allowed plaintiffs to send identical reminder notices.
*Dyson*, 308 F.R.D. at 516-17; *Page*, 2015 U.S. Dist. LEXIS 182322 at *12.

### 5.    <u>Telephone Contact</u>

Plaintiffs request all phone numbers (home, mobile, etc.) for the Class Members in the
possession of Defendants so that Plaintiffs' counsel can confirm addresses, locate persons who
have moved from their last known address, confirm receipt of notice and if the Class Members
have questions, answer those questions.  This Court, many other district courts, and the Fifth
Circuit have approved production of phone numbers and direct contact with Class Members by
plaintiffs' counsel, particularly those involving immigrant workers.  *See Montelongo v. Meese,*
803 F.2d 1341, 1352 (5th Cir. 1986) ("over defendants' objection, plaintiffs personally contacted
as many class members as possible" and noting "the mobile, semi-literate character of the
class"); *Dyson,* 308 F.R.D. at 516-17; *Page*, 2015 U.S. Dist. LEXIS 182322 at *10-11; *Joaquin*,
2016 U.S. Dist. LEXIS 166861 at *8.[6]   Plaintiffs' counsel agrees to abide by the script attached

---

[6]*See also* Jones v. JGC Dallas LLC, 2012 WL 6928101 *5 (N.D. Tex. Nov. 29, 2012); *See
Eggelston v.Sawyer Sportsbar, Inc.,* 2010 WL 2639897, at *4 (S.D.Tex. June 28, 2010) (order
conditionally certifying class of bartenders and granting expedited discovery of **telephone numbers
and emails**); *McCarragher v. Ryland Group, Inc.*, 2012 WL 4857575 at *6 (S.D. Tex. Oct. 11,
2012) ("must provide … **e-mail addresses, telephone numbers** …of the members of the collective
action class."); *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 996 (E.D. Tex. 2011)
("**ORDERS** the Defendants to provide…names, job titles, addresses, **telephone numbers**, Social
Security numbers, and **email addresses**, if available, of the potential class members."). *Beall v.
Tyler Technologies, Inc.*, 2009 WL 1766141 at *4 (E.D. Tex. June 23, 2009) ("orders defendants

hereto as Exhibit F[7] when contacting Class Members and agrees to call the Class Members with only once, unless a Class Member requests additional contact. *See e.g. Page*, 2015 U.S. Dist. LEXIS 182322 at *10-12.

### 6.    Notice Posted at Workplace.

District courts regularly order defendants to post notice of collective actions in the workplace. *E.g. Joaquin*, 2016 U.S. Dist. LEXIS 166861 at *10; *Pacheco*, 127 F.Supp. at 699 (and prior order at Dkt. 39); *Whitehorn v Wolfgang's Steakhouse, Inc.*, 2011 WL 420528, at *2 (S.D.N.Y. Feb. 8, 2011) ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail."); *Malloy v. Richard Fleischman & Assocs. Inc.,* 2009 WL 1585979, at *4 (S.D.N.Y. June 3, 2009) (requiring defendant to "post the notice in each workplace where potential collective action members are employed"); *Garcia v. Pancho Villa's of Huntington Vill., Inc.,* 678 F. Supp. 2d 89, 96 (E.D.N.Y. 2010) ("[W]hile defendants object to the posting of the Notice at their business locations—and request an order prohibiting it—such a practice has been routinely approved in other cases."); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 493 (E.D. Cal. April 19, 2006) (ordering notice to be posted at each of defendant's business locations, noting that defendant face "only a small burden in being required to post the notice," and that "multiple district courts have approved this method of notice"); *Johnson v. Am. Airlines, Inc.*,

---

to provide …names, job titles, addresses, **telephone numbers**, Social Security numbers, and **email addresses** ..."); *Luvianos v. Gratis Cellular, Inc.*, 2012 WL 6737498 (S.D. Tex. Dec. 10, 2012) report and recommendation adopted, 2012 WL 6743559 at *10 (S.D. Tex. Dec. 28, 2012) ("disclosure to Plaintiffs' counsel of employees' … **phone numbers, and email addresses** … is not unduly invasive."); *Tolentino v. C & J Spec-Rent Services Inc.*, 716 F. Supp. 2d 642, 655 (S.D. Tex. 2010) ("orders that Defendant produce …**phone numbers, and e-mail addresses**...").

[7]To be read in Spanish unless the caller begins speaking in English.

531 F.Supp. 957, 961 (N.D.Tex.1982) (approving notice by direct mail, posting notice on company bulletin boards, and publishing notice in company magazine).

      **7.**    <u>**Notice Distributed with Paychecks.**</u>

Another similar and efficient method of distributing notice adopted by numerous district courts is to deliver a copy together with current employees' paychecks.  *E.g. Joaquin*, 2016 U.S. Dist. LEXIS 166861 at *9 (Yeakel, J.); *Curless v. Great Am. Real Food Fast, Inc.*, 280 F.R.D. 429, 437 (S.D. Ill. 2012); *Ritzer v. UBS Fin. Servs., Inc.*, 2008 WL 4372784, at *5 (D.N.J. Sept. 22, 2008).

      **8.**    <u>**No Retaliation or Inquiry Into Immigration or Citizenship Status.**</u>

Plaintiffs request this Court include in the notice to Class Members that they will not be retaliated against for participation in the suit and that they will not be asked questions or threatened concerning their immigration status or reported to immigration enforcement.  These notices are particularly important in this case because of the fears and concerns of the class members about retaliation and immigration status and the communications about this suit that have already taken place.  *See* Exs. A, B and C, and Section III(2), *supra*. The FLSA clearly makes it illegal to retaliate against an employee for participating in a collective action.   29 U.S.C. §215(a)(3).   Additionally, "[I]t is well established that the protections of the Fair Labor Standards Act are applicable to citizens and aliens alike and whether the alien is documented or undocumented is irrelevant."  *In re Reyes*, 814 F.2d 168, 170 (5th Cir. 1987); *Castillo v. Hernandez*, No. EP-10-CV-247-CV, 2011 U.S. Dist. LEXIS 42632, *11 (W.D. Tex. Apr. 20, 2011). Discovery into immigration status in FLSA cases is therefore impermissible, because disclosure of immigration information could prevent parties from asserting their rights for fear of suffering immigration-related consequences.  *Id.*   Multiple courts have included these

particularly important and relevant statements of law in notices to class members. *E.g. Joaquin*, 2016 U.S. Dist. LEXIS 166861 at *11 and Ex. D (Yeakel, J.) (no discrimination or retaliation for immigration status); *Moore & Hien v. C & J Energy Servs.*, No. H-15-1136, 2015 U.S. Dist. LEXIS 177871 at *17, (S.D. Tex. 2015) (no retaliation); *Belt v. Emcare, Inc.,* 299 F. Supp. 2d 664, 672 (E.D. Tex. 2003) (no retaliation).

       9.     **No Communication By Defendants With Class Members Regarding This Suit.**

As Judge Yeakel ordered in *Joaquin*, Plaintiffs request that this Court order Defendants to not communicate in any form directly or indirectly about any aspect of this lawsuit with any Class Member until this suit's conclusion. *See* 2016 U.S. Dist. LEXIS 166861 at *10 and Ex. D. Plaintiffs' request is particularly appropriate in this case in light of the communications Defendants have already had with its employee Class Members to date. (*See* Exs. A, C and section III(2) *supra*.) "Because of the potential for abuses in collective actions, such as unapproved, misleading communications to absent class members, 'a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.'" *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 667 (E.D. Tex. 2003) (citing *Gulf Oil Company v. Bernard*, 452 U.S. 89, 100, 68 L. Ed. 2d 693, 101 S. Ct. 2193 (1981)).

"As commercial speech, *ex parte* communications tending to discourage absent class members from joining the suit may be limited by orders grounded in good cause and issued with a heightened sensitivity for First Amendment Concerns."[8] *Belt*, 299 F. Supp. 2d at 668 (*citing*

---

       [8]Courts must base any order limiting communications between parties and potential class members on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of parties. *Belt*, 299 F. Supp. 2d at 668 (citations omitted).

*Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1206 (11th Cir. 1985); *Hampton Hardware,*

*Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 633 (N.D. Tex. 1994)).   Moreover:

> "when a given form of speech is inherently conducive to overreaching and
> duress," a showing of a particular existing harm is not required; a likelihood of
> serious abuse is sufficient. Speech between parties with an ongoing business
> relationship is inherently conducive to coercive influence, and an employer-
> employee relationship is a salient example of this type of ongoing business
> relationship.

*Castillo v. Hernandez*, 2011 U.S. Dist. LEXIS 42632, *9-10 (W.D. Tex. Apr. 20, 2011)

(citations omitted).[9]

In the case at hand, Defendants' *ex parte* communications about this lawsuit with its

current employees presumably occurred in person and at work.   Such unsupervised oral

communications:

> by their very nature, are wont to produce distorted statements on the one hand and
> the coercion of susceptible individuals on the other. Moreover, in-person
> communications such as occurred in the present case may exert pressure and often
> demands an immediate response, without providing an opportunity for comparison
> or reflection. Clearly, the aim and effect of such in-person communication is to
> provide a one-sided presentation and to encourage speedy and perhaps uninformed
> decision-making, providing no opportunity for intervention or counter-education. .
> . . It is difficult to conceive of any advice from [defendant] regarding the lawsuit
> that is not rife with the potential for confusion and abuse given defendant's interest
> in this lawsuit.

---

[9]*See also Recinos-Recinos v. Express Forestry, Inc.*, No. 05-1355, 2006 U.S. Dist. LEXIS
2510 at *12 (E.D. La. 2006) ("an ongoing business relationship between the defendants and the
plaintiffs and potential plaintiffs may cause communications to be coercive. Where, as here, there
is a relationship that is inherently coercive, the court need not make a finding that a particular abuse
occurred.");  *EEOC v. Morgan Stanley & Co., Inc.*, 206 F.Supp.2d 559, 562-3 (S.D.N.Y. 2002)
(finding "the danger of such coercion between employers and employees sufficient to warrant the
imposition of restrictions regarding communication between defendants and potential class
members"); *Abdallah v. Coca-Cola Company*, 186 F.R.D. 672, 678 (N.D.Ga.1999) ("Coca-Cola has
not given the Court any reason to suspect that it will attempt to mislead its employees and coerce
them into non-participation in this case. But simple reality suggests that the danger of coercion is
real and justifies the imposition of limitations on Coca-Cola's communications with potential class
members.").

*Recinos-Recinos v. Express Forestry, Inc.*, No. 05-1355, 2006 U.S. Dist. LEXIS 2510 at *12 (E.D. La. 2006). As the court noted in *Castillo*, "direct contact between parties in class action litigation is to be avoided, presumably in part to avoid trickery and coercion; instead, any necessary contacts related to the subject matter of the litigation are to be funneled through the parties' respective counsel." 2011 U.S. Dist. LEXIS 42632 at *12.

For the foregoing reasons, Plaintiffs request this Court to issue an order that Defendants not communicate in any form directly or indirectly about any aspect of this lawsuit with any Class Member until this suit's conclusion.

### IV.  CONCLUSION

Plaintiffs have presented detailed sworn declarations and ample support for conditional certification and providing Class Members with notice as set forth in this motion. Plaintiffs respectfully request that this Court grant Plaintiffs' motion and direct notice to the Class Members as provided herein.

Respectfully submitted,

CREWS LAW FIRM, P.C.
701 Brazos, Suite 900
Austin, Texas 78701
(512) 346-7077
(512) 342-0007 (Fax)
schmidt@crewsfirm.com
Robert W. Schmidt
State Bar No. 17775429
Joe K. Crews
State Bar No. 05072500

By: ___/s/____Robert W. Schmidt_____
ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

This is to certify on January 19, 2017 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing in accordance with the Federal Rules of Civil Procedure to the following counsel representing the defendant in this action:

Michael J. Golden
Boulette, Golden & Marin, LLP
2801 Via Fortuna, Suite 530
Austin, TX 78746
512.732.8905 (facsimile)
mike@boulettegolden.com

By:      /s/ Robert W. Schmidt

## <u>CERTIFICATE OF CONFERENCE</u>

This is to certify that I confer with counsel for the Defendants' by telephone on Wednesday, January 4, 2017 and he indicated that Defendants oppose conditional certification of this case.  I sent an email to Defendants counsel on Monday, January 16, 2017 to confer and confirm Defendants' position but counsel for Defendants has not responded.

By:      /s/ Robert W. Schmidt
         Robert W. Schmidt