IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SERGIO CONTRERAS and <br> ALBERTO SANCHEZ, <br> on Behalf of Themselves and <br> Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> LAND RESTORATION LLC and <br> LAND RESTORATION HOLDINGS LLC, <br><br> Defendants. | § § § § § § § § § § § § § § § | 1:16-CV-883-RP |

**ORDER**

Before the court are Plaintiffs' Motion for Conditional Certification of Collective Action and Notice to Class (Dkt. 14) and the responsive briefings thereto. Having considered the parties' submissions, the record in this case, and the applicable law, the court issues the following order.

**I. BACKGROUND**

Plaintiffs Sergio Contreras and Alberto Sanchez ("Plaintiffs") bring this action both individually and on behalf of all others similarly situated against defendants Land Restoration LLC and Land Restoration Holdings LLC ("Defendants") asserting violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

Plaintiffs allege Defendants run a business that provides residential and commercial landscaping design, construction, and maintenance services, and that they were employed by Defendants as manual laborers from approximately 2012 through 2014. (Pl. Compl., Dkt. 1, ¶¶ 9, 11). Defendants purportedly had Plaintiffs work for 10 to 12 hours a day and 50 to 60 hours a week, without paying overtime compensation, in violation of the FLSA. (*Id.*, ¶ 12). According to Plaintiffs, Defendants ignored their complaints regarding compensation and knowingly, willfully, or with reckless disregard carried out an

1

illegal pattern or practice of failing to pay all overtime and other compensation as required by the FLSA. (*Id.*, ¶ 13). Plaintiffs allege that their experience is typical of the experience of similarly situated laborers employed by Defendants. (*Id.*, ¶¶ 15–19).

Accordingly, Plaintiffs have filed a motion seeking conditional certification of this lawsuit as a collective action under the FLSA. Plaintiffs assert that similarly situated individuals whose rights under the FLSA have been violated by Defendants should be permitted to opt-in to this action. Defendants have responded in opposition to Plaintiffs' motion (Dkt. 16), Plaintiffs have replied (Dkt. 17), and the motion is now ripe for review.

## II. LEGAL STANDARD

The FLSA permits a court to order an action to proceed as a collective action on behalf of others similarly situated. The statute provides:

> An action . . . may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

Thus, unlike a class action filed under Federal Rule of Civil Procedure 23(c), a collective action under § 216(b) provides for a procedure to "opt-in," rather than "opt-out." *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 225 (5th Cir. 2011) (citing *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 (5th Cir. 2008)).

The threshold issue to certifying a collective action under the FLSA is whether the plaintiff can show the existence of a class whose members are "similarly situated." The Fifth Circuit recognizes two approaches to making this determination. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995). The first is a two-step conditional certification process known as the *Lusardi* approach, after *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). The second is a Rule 23–style analysis known as the

*Shushan* approach, after *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo. 1990). Although the Fifth Circuit has declined to specifically adopt either test, both the Fifth Circuit and the Supreme Court have made statements implying that a Rule 23-type analysis is incompatible with FLSA collective actions. *See Genesis Healthcare Corp., v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."); *Donovan v. Univ. of Tex. at El Paso*, 643 F.2d 1201, 1206 (5th Cir. 1981) ("The FLSA procedure, in effect, constitutes a congressionally developed alternative to the F. R. Civ. P. 23 procedures."). Moreover, the majority of courts within this circuit have adopted the *Lusardi* two-stage approach. *See, e.g., Vanzzini v. Action Meat Distribs., Inc.*, 995 F. Supp. 2d 703, 719 (S.D. Tex. 2014); *Mateos v. Select Energy Servs., LLC*, 997 F. Supp. 2d 640, 643 (W.D. Tex. 2013); *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 994 (E.D. Tex. 2011); *Marshall v. Eyemasters of Tex., Ltd.*, 272 F.R.D. 447, 449 (N.D. Tex. 2011). This court has previously assessed conditional certification under *Lusardi*, and will do so again here. *See Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 512–13 (W.D. Tex. 2015).

Under *Lusardi*, the court approaches the 'similarly situated' inquiry via a two-step analysis, consisting of a "notice" and a "decertification" stage:

> First, the court determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class. If they are, notice is sent and new plaintiffs are permitted to "opt in" to the lawsuit. Second, after discovery is largely complete and more information on the case is available, the court makes a final determination of whether all plaintiffs are sufficiently similarly situated to proceed together in a single action.

*Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010) (internal citations omitted)

The determination at the notice stage is "usually based only on the pleadings and any affidavits which have been submitted." *Mooney*, 54 F.3d at 1214. "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Id.* District courts in Texas frequently apply a three element test, requiring a

plaintiff to show that: "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *See, e.g.*, *Abeldano v. HMG Park Manor of Westchase, LLC*, 2016 WL 5848890 at \*6 (S.D. Tex. Oct. 6, 2016) (collecting cases). "'The remedial nature of the FLSA and § 216 militate strongly in favor of allowing cases to proceed collectively.'" *Tolentino v. C & J Spec-Rent Servs. Inc.*, 716 F. Supp. 2d 642, 647 (S.D. Tex. 2010) (quoting *Albanil v. Coast 2 Coast, Inc.*, 2008 WL 4937565 at \*3 (S.D. Tex. Nov. 17, 2008)). The decision of whether to conditionally certify the class and facilitate notice of potential class members based on the plaintiff's pleadings and evidence is "soundly within the discretion of the district court." *Mateos*, 977 F. Supp. 2d at 644 (citing *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

"The second determination is typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial." *Mooney*, 54 F.3d at 1214. "At this stage, courts are much less likely to allow the collective action to continue to trial." *Portillo v. Permanent Workers, LLC*, --- F. App'x ----, 2016 WL 6436839 at \*3 (5th Cir. 2016) (citing *Mooney*, 54 F.3d at 1214). If the court finds the opt-in plaintiffs are not similarly situated, those plaintiffs are dismissed without prejudice and only the named plaintiffs proceed to trial. *Mooney*, 54 F.3d at 1214.

### III. DISCUSSION

Plaintiffs seek conditional certification on behalf of a class of similarly situated persons, and the record consists only of pleadings, briefings on the issue of conditional certification, and declarations submitted by Plaintiffs. Accordingly, the court need only address the first stage of the *Lusardi* inquiry.

Plaintiffs seek certification with respect to:

> Defendants' current and former employees who worked as manual laborers and were paid an hourly or daily rate at any time during the three year period before the filing of this lawsuit.

(Pl. Mot., Dkt. 14, at 5).

Plaintiffs' declarations, produced through the use of Spanish-English translators, contain largely the same allegations. Because the court reviews Plaintiffs' declarations in greater detail *infra*, it provides only a short summary here. Plaintiffs each state that they worked for Defendants from 2012 to 2014 as manual laborers in the areas of landscaping and construction, that neither they nor their coworkers were paid overtime, and that a number of potential class members fear both work and immigration status-related retaliation should they come forward as interested in joining this lawsuit. Plaintiffs thus argue that the possibilities of coercion and retaliation in this case merit special consideration in light of the fact that the class would be composed of "almost all non-English-speaking immigrant workers who earn low wages, are relatively transient, moving as necessary to find employment, and have legitimate fears of retaliation for asserting their rights under the FLSA." (Pl. Mot., Dkt. 14, at 6). They ask that these concerns be addressed in determining the contents of the notice to potential class members, as well as the methods by which to promulgate it.

Defendants respond that Plaintiffs' declarations do not demonstrate a reasonable basis to credit the assertion that other aggrieved individuals exist and were not paid overtime pursuant to a single decision, policy, or plan. They also argue that Plaintiffs have failed to identify any other individuals who wish to opt in to the lawsuit. Lastly, and in the alternative, Defendants request that should conditional certification be granted, Plaintiffs' proposed methods of providing notice to putative class members be rejected in favor of U.S. Mail as the sole method of delivery.

### A. Defendants' Objections to Plaintiffs' Declarations

Defendants focus heavily on the underlying bases of the statements in Plaintiffs' declarations. They move to strike a number of statements in Plaintiffs' declarations as not based on personal knowledge. For example, Defendants argue that Plaintiffs do not indicate how they have any personal knowledge about the hours that their coworkers worked. (Def. Resp., Dkt 16, at 4). Similarly, Defendants contend that Plaintiffs' statement that they knew that their coworkers were not paid

5

overtime "from their '*conversations with other coworkers* where [they] talked about how [they] were paid and how [they] did not get paid overtime'" is no more than a conclusion, supported with hearsay. (*Id.* (quoting Pls. Mot., Exs. A, B) (emphasis added)).

Although the standard at the conditional certification stage is lenient, "'most courts require some factual support' for allegations presented in the complaint, either in the form of multiple affidavits with some factual basis or other supporting evidence." *McCloud v. McClinton Energy Grp., L.L.C.*, 2015 WL 737024 at *4 (W.D. Tex. Feb. 20, 2015) (quoting *Aguirre v. SBC Commc'ns, Inc.*, 2006 WL 964554 at *6 (S.D. Tex. Apr. 11, 2006)). However, "most courts that have addressed the issue agree that affidavits submitted at the notice stage of class certification need not be in a form admissible at trial." *Id.*; *see Abeldano*, 2016 WL 5848890 at * 7; *Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 761 (N.D. Tex. 2013) (collecting cases). The reasoning for this is two-fold:

> Requiring a plaintiff to present evidence in favor of conditional certification that meets the standards in Rule 56 fails to take into account that the plaintiff has not yet been afforded an opportunity, through discovery, to test fully the factual basis for his case. Second, motions for conditional certification, unlike motions for summary judgment, do not seek the final disposition of the case on the merits. . . . [W]hether the motion for conditional certification is granted or denied, the case proceeds with discovery.

*Castillo v. Alkire Subway, LP.*, 2009 WL 9529354 at *5 (S.D. Tex. Apr. 30, 2009) (quoting *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 368 (E.D. Tenn. 2006)). Nevertheless, while Plaintiffs need not "present evidence that would meet *all* of the requirements of [Federal Rule of Civil Procedure] 56(e)," their declarations must still "be based on personal knowledge." *Lee*, 980 F. Supp. 2d at 762 (collecting cases).

Courts have found that an employee can have personal knowledge of the employment conditions of other employees by virtue of their work experience. *See, e.g.*, *Abeldano*, 2016 WL 5848890 at *7 (S.D. Tex. Oct. 6, 2016) (finding it reasonable to infer at the notice stage that plaintiffs who worked for the defendant for at least six months could have "gain[ed] personal knowledge of the working

6

conditions" at their place of employment); *Lee*, 980 F. Supp. 2d at 763–64 (finding it reasonable to infer at the notice stage that employees "had personal knowledge of the employment conditions of other [employees] based on their own observations and experiences during their employment."); *Dyson*, 308 F.R.D. at 514 (Pitman, J.) (accepting declarant's statement that he had worked for the employer-defendant for over a year and was familiar with company-wide practices due to working closely with other employees).

A declarants' statement of personal knowledge is also influential. For example, in *Tolentino v. C & J Spec-Rent Servs. Inc.*, 716 F. Supp. 2d 642, 648–49 (S.D. Tex. 2010), the district court relied upon three declarations, each by an employee without supervisory responsibilities. Each employee stated that there were hundreds of other employees who performed the same tasks, and each stated that they "ha[d] personal knowledge that all employees of the defendant who worked in the field as operators were paid fixed salaries, regardless of the number of hours worked, and were never paid any overtime wages for [hours] worked in excess of 40 per week, at least through the end of 2008." *Id.* The court characterized the declarations as "ideal for analysis" and determined that the plaintiffs had shown it reasonable to believe that there were other aggrieved employees. *Id.* at 649.

Additionally, courts frequently look to hearsay at the notice stage. This does not conflict with the requirement of personal knowledge, insofar as the utterance of the hearsay statement is within the personal knowledge of the affiant. Hearsay provides "some factual support" for a plaintiff's allegations, although in a form that "does not meet the evidentiary standards set forth in Rule 56(e)." *See White*, 236 F.R.D. at 368 ("Because the Court can reasonably infer that these statements are based on personal knowledge, albeit perhaps hearsay, the Court will not strike them"); *Wedel v. Vaughn Energy Servs., LLC*, 2015 WL 5920034 at *2 (S.D. Tex. Oct. 9, 2015) ("[A]ffidavits submitted at the notice stage of class certification need not be in a form admissible at trial . . . [m]ost courts only require that a declarant can demonstrate that the allegations in his declaration are based on personal knowledge . . . [which] can

include inferences and opinions, as well as declarant's conversations with other employees." (citations omitted)); *McCoy v. RP, Inc.*, 2015 WL 6157306, at *3 (D.S.C. Oct. 19, 2015) ("[H]earsay evidence in an affidavit supporting a motion for conditional certification may be considered so long as it is based on personal knowledge.").

Whether framed in terms of "personal knowledge" or not, the acceptance of hearsay at the conditional certification stage is widespread in Texas. *See, e.g.*, *Pacheco v. Aldeeb*, 2015 WL 1509570 at *4 (W.D. Tex. Mar. 31, 2015) (finding declarants' statements that they were "familiar with [the employer's] compensation policies through their work as employees and their discussions with other employees" were "sufficient to show personal knowledge of [the employer's] compensation practices"); *Kelley v. Cal Dive Int'l, Inc.*, 2013 WL 2190010 at *1 (S.D. Tex. May 20, 2013) (considering, over defendant-employer's protest, employee declarations that they and all others were consistently underpaid "based upon their own personal experiences and observations and upon their conversations with other [employees]"); *Abeldano* at *7 (S.D. Tex. Oct. 6, 2016) (considering, inter alia, employee-plaintiff's declarations that they became aware of how the policy in question affected other employees "through conversations" with one another); *Castillo*, 2009 WL 952935 at *5 (finding that "factual support for the plaintiff's claims need not meet summary judgment type evidentiary standards at the notice stage" and refusing to strike the affidavits in question based on defendants' contention that they contained hearsay).[1]

---

[1] This is not limited to Texas; courts across the country consider hearsay at the notice stage. *See, e.g.*, *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 58–59 (E.D.N.Y. 2011) (stating that "courts in [the Second Circuit] regularly rely on [conclusory allegations and hearsay] to determine the propriety of sending a collective action notice" and granting conditional certification in unpaid overtime suit "based upon the fact that [the affiant-plaintiffs and other workers] specifically discussed the matter among themselves."); *Brown v. Ak Lawncare, Inc.*, 2015 WL 5954811 at *3 (E.D. Mich. Oct. 14, 2015) (affiants' "belief" that coworkers were not paid overtime based on "conversations" with them sufficient to sustain "modest burden" at notice stage); *Coan v. Nightingale Home Healthcare, Inc.*, 2005 WL 1799454 at *1 n.1 (S.D. Ind. June 29, 2005) (considering affidavits containing "hearsay in the form of testimony about what other employees told the affiants about whether defendant paid them overtime" because "[a]t this preliminary stage and for these preliminary purposes, plaintiffs need not come forward with evidence in a form admissible at trial."); *Syed v. M-I, L.L.C.*, 2014 WL 6685966 at *7 (E.D. Cal. Nov. 26, 2014) (accepting "conversations" with coworkers as basis for declarants' generalizations about engineering position duties; "[a]t this stage, the limitation on hearsay is relaxed"); *Casarotto v. Expl. Drilling, Inc.*, 2015 WL 8780050 at *2 (D. Mont. Dec. 15, 2015) ("At the first step of class certification, the evidentiary rules are relaxed and hearsay may be considered.").

The court agrees with the above cases, and will apply a "relaxed evidentiary standard" at the notice stage. *See Kelley*, 2013 WL 2190010 at *1. It therefore declines to strike those of Plaintiffs' statements that Defendants have identified as lacking a basis in personal knowledge. Plaintiffs expressly swear that they have personal knowledge of the facts in their declarations. Plaintiffs additionally state that they worked for Defendants for two years, a time period in which it can be reasonably inferred that they gained personal knowledge of the working conditions at their place of employment, including that their coworkers worked more than 40 hours a week, by virtue of working alongside those coworkers. And finally, the court will consider the hearsay statements contained in Plaintiffs' declarations for the probative value they provide.

### B. Conditional Certification

Having disposed of Defendants' objections to the court's consideration of Plaintiffs' declarations, the court turns to the question of conditional certification. As stated above, district courts in Texas frequently apply a three element test, requiring a plaintiff to show that: "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *See, e.g.*, *Abeldano*, 2016 WL 5848890 at *6 (collecting cases).

First, the court finds that there is a reasonable basis for crediting the assertion that aggrieved individuals exist, and that those aggrieved individuals are similarly situated to Plaintiffs. Both Plaintiffs state that they worked for Defendants for approximately two years. (Pl. Mot., Dkt. 14, Exs. A, B). Their work consisted of digging holes, planting trees and plants, installing lawn turf, loading and unloading trucks with landscaping materials, and carrying out various landscaping, maintenance, and construction projects. During that time, Defendants employed between ten and twenty other employees who performed similar manual labor. Plaintiffs frequently worked more than forty hours a week, but neither

9

was paid overtime. Plaintiff Sanchez complained to his "boss" a number of times, who told him that Defendants would make it up in the next pay check. This never happened. When Plaintiff Contreras would complain to a foreman named Roberto that the hours he had worked and the hours he was being paid for did not align, Roberto would respond with words to the effect of "well that's what we're paying you for" and "this is how [Defendants] pay" and that if he didn't like it, he could "look elsewhere." Plaintiffs state that they know their coworkers were paid in the same way as they were, and did not receive overtime for hours worked over 40 a week, based on frequent conversations in which they and their coworkers complained about this.

These allegations are sufficient to demonstrate that "it is reasonable to believe that there are other aggrieved employees who are subject to an allegedly unlawful policy or plan." *Villareal v. St. Luke's Episcopal Hosp.*, 751 F. Supp. 2d 902, 917 (S.D. Tex. 2010); *Tolentino*, 716 F. Supp. 2d at 649. Plaintiffs could reasonably have gained personal knowledge of their coworkers' work conditions over the course of two years working with them, and in any event, the court considers Plaintiffs' hearsay evidence at this stage of the litigation. Together, Plaintiffs' declarations indicate that "unnamed employees of [Defendants] were allegedly treated in the same manner . . . that Defendant[s] failed to properly pay overtime wages . . . [and] that Defendant[s] allegedly implemented the same policy with respect to different employees." *Villareal*, 751 F. Supp. 2d at 918.

For the same reasons, the allegations are also sufficient to demonstrate those aggrieved individuals are similarly situated. Aggrieved individuals' "positions need not be identical, but similar." *Id.* This means "similarly situated in terms of job requirements and similarly situated in terms of payment." *Prater v. Commerce Equities Mgmt. Co.*, 2007 WL 4146714, at *5 (S.D. Tex. Nov. 19, 2007) (citing *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007)). Plaintiffs state that their coworkers performed similar job duties as they did, as manual laborers in landscaping and construction, and that their coworkers were paid in the same way as they were. The court can reasonably infer that

these statements are based on Plaintiffs' personal observations and experiences during their employment as well as Plaintiffs' communications with their superiors and coworkers. Plaintiffs have therefore provided a sufficiently "reasonable basis for the allegation that a class of similarly situated persons exist[s]." *Id.* (citing *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F.Supp.2d 793, 798 (E.D. La. 2007)).

As for the third element, courts are split as to whether a plaintiff must present evidence that similarly situated, aggrieved individuals actually want to opt in to the lawsuit. *Compare, e.g., Tolentino v. C & J Spec-Rent Servs. Inc.*, 716 F. Supp. 2d 642, 647 (S.D. Tex. 2010) (plaintiff must show that individuals wish to opt in); *McCloud v. McClinton Energy Grp., L.L.C.*, 2015 WL 737024 at *3 (W.D. Tex. Feb. 20, 2015) (same), *with Jones v. Cretic Energy Servs., LLC*, 149 F. Supp. 3d 761, 768 (S.D. Tex. 2015) (plaintiff need not show that others wish to opt in); *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, 2008 WL 5204149, *3 (S.D. Tex. Dec. 11, 2008) (same).

Those courts which have rejected this showing have done so on a variety of bases, the most common being that evidence of putative class members' willingness to join the lawsuit is not statutorily required and that requiring such evidence "conflicts with the Supreme Court's directive that the FLSA be liberally construed to effect its purposes." *See Jones*, 149 F. Supp. 3d at 768 (citing *Tony and Susan Alamo Foundation v. Sec'y of Labor*, 471 U.S. 290 (1985)); *Villareal v. St. Luke's Episcopal Hosp.*, 751 F. Supp. 2d 902, 916 (S.D. Tex. 2010) ("Liberally construing the FLSA to effect its purposes, the court finds that it is enough for the plaintiff to present evidence that there may be other aggrieved individuals to whom a class action notice should be sent, without requiring evidence that those individuals actually intend to join the lawsuit.").

This court agrees with the above and finds that Plaintiffs need not specifically show that other aggrieved individuals desire to opt in. Requiring Plaintiffs to identify and obtain preliminary support from potential class members is "putting the cart before the horse." *Black v. SettlePou, P.C.*, 2011 WL 609884 at *3 (N.D. Tex. Feb. 14, 2011).

### C. Definition and Notice Issues

As the court has concluded that conditional certification is appropriate, matters of notice and the definition of the proposed class must be addressed. As already mentioned, Plaintiffs have put forth the following definition:

> Defendants' current and former employees who worked as manual laborers and were paid an hourly or daily rate at any time during the three year period before the filing of this lawsuit.

(Pl. Mot., Dkt. 14, at 5).

Defendants do not oppose this definition, and the court accepts it.

Next, Plaintiffs request the court compel Defendants, within ten days from entry of this order, to disclose the names, last known addresses, email addresses, and telephone numbers of the above-defined putative class members. They further ask that the court approve an attached Notice and Consent form, to be distributed in both English and Spanish, to the class members. Distribution would take place through mail, email, Facebook, inclusion in current employees' paychecks, and posting of the notice at Defendants' workplace. The notice would inform putative class members that, if they wish to participate in the suit, they cannot be questioned or retaliated against in relation to their immigration status. Plaintiffs also ask the court forbid Defendants from communicating with putative class members about this lawsuit until the lawsuit's conclusion. These methods of notice and precautions are allegedly necessary due to characteristics typical of the putative class members, who "are almost all non-English-speaking immigrant workers who earn low wages, are relatively transient, moving as necessary to find employment, and have legitimate fears of retaliation for asserting their rights under the FLSA." (Pl. Mot., Dkt. 14, at 6).

Defendants raise three objections. First, they criticize Plaintiffs' description of the characteristics of the putative class members as "unsubstantiated" and unsupported by Plaintiffs' declarations. (Def. Resp., Dkt. 16, at 7). Second, they oppose any method of notice other than through U.S. Mail. (*Id.*).

Third, they argue that "Plaintiffs' request for telephone notice flies directly in the face of court-supervised and approved notice, the purpose of which is to ensure that potential class members are not misled as to the nature of the claims and are given a neutral description of the litigation that serves as notice instead of marketing." (*Id.*, at 7–8). Beyond this, however, Defendants do not object to the proposed methods of notice with any specificity. The court addresses these arguments below.

### i. Characteristics of the Putative Class Members

As already discussed, the court applies a relaxed evidentiary standard at this stage of the litigation. Plaintiffs' declarations both state that, either after having spoken with workers still employed by Defendants or based on knowledge about those workers, the workers "are afraid of joining this lawsuit," and fear being "fired or retaliated against," especially "because of possible issues about their residency or citizenship." (Pl. Mot., Dkt. 14, Exs. A, B). Plaintiffs' knowledge of the personal circumstances faced by other of Defendants' workers may also be reasonably inferred from the two year time period that Plaintiffs spent working for Defendants. While Plaintiffs' declarations are not as detailed or explicit in describing the characteristics of the putative class members as is the motion, the declarations do convey that the putative class members are individuals who work as landscaping laborers, have not been or are not paid overtime, and who fear retaliation relating to their residency or citizenship. Further, both Plaintiffs were required to utilize a Spanish-English translator in producing their declarations. Such characteristics are consistent with and corroborate the description of the putative class in the motion. Additionally, the court is operating under the assumption that both parties have acted in good faith in making representations to the court. *See* Fed. R. Civ. P. 11. The court will therefore take Plaintiffs' description of the putative class into account, as necessary, in deciding the notice-related issues below.

**ii. Methods of Notice**

Plaintiffs have asked the court to approve notice via mail, email, Facebook, posting at the workplace, and inclusion in current employee's paychecks. While some courts have allowed all of these methods of notice in a single action, *see, e.g.*, *Joaquin v. Hinojosa*, 2016 U.S. Dist. LEXIS 166861 at *8–9 (W.D. Tex. Nov. 28, 2016), this court will not permit the use of social media, absent some showing that the other proposed methods of notice are insufficient. That the putative class members here may be more difficult to reach than is usually expected does not convince the court otherwise. However, because Defendants have proffered no argument as to how any of the other proposed methods would be unduly burdensome, the court will permit Plaintiffs to distribute notice through mail, email, posting at the workplace, and inclusion in current employee's paychecks.

As for Defendants' objection to "telephone notice," the court notes that Plaintiffs have not requested telephone numbers for purposes of notice. According to Plaintiffs, any contact with putative class members by telephone will be solely for the purposes of confirming addresses, locating persons who have moved from their last known address, confirming receipt of notice, and answering questions should any be asked. In making these calls, Plaintiffs' counsel agrees to adhere to the "Script for Contacting Class Members" attached to Plaintiffs' motion as Exhibit F, and to call each potential class member only once unless further contact is requested.

This court and numerous others have ordered employers to produce telephone numbers for the purpose of facilitating the sending of notice. *See, e.g.*, *Dyson*, 308 F.R.D. at 516–17 (Pitman, J.) (agreeing with plaintiffs that phone numbers are a stable form of contact and noting that "a plethora of . . . courts have allowed discovery of phone numbers of putative class members"); *Eggelston v. Sawyer Sportsbar, Inc.*, 2010 WL 2639897 at *1, 4 (S.D. Tex. June 28, 2010) (ordering production of telephone numbers in order to facilitate the notification process); *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 996 (E.D. Tex. 2011) ("To facilitate notice . . . the court orders the Defendants to provide the Plaintiffs

with the . . . telephone numbers of the potential class members."). The court is mindful, however, that "[i]n exercising the discretionary authority to oversee the notice-giving process, [it] must be scrupulous to respect judicial neutrality" and that it "must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989). Thus, in resolving a similar dispute over telephone contact in a recent case, this court permitted the plaintiffs to contact putative class members by phone for the purpose of ensuring receipt of the notice and consent forms, but limited them to one phone call per potential class member, during which they were to "hew directly to [a] script to be agreed upon, in good faith, by [the parties]." *Page v. Crescent Directional Drilling, L.P.*, 2015 U.S. Dist. LEXIS 182322 at *11 (W.D. Tex. Dec. 10, 2015).

The court finds this to be a fair compromise. Plaintiffs have provided a proposed script. While Defendants did not object to the content of the script, they did vehemently object to the prerequisite telephone contact. Rather than unilaterally adopt Plaintiffs' proposed script, the court instead orders the parties to confer and submit an agreed telephone script within fourteen days of the entry of this order. Additionally, Plaintiffs may not call potential class members more than once for the purpose of ensuring receipt of the notice and consent forms.

### iii. Notice of Right to be Free from Retaliation

Plaintiffs further ask that the court approve providing putative class members with notice of their right to be free from work and immigration status-related retaliation if they participate in this lawsuit. *See* 29 U.S.C. § 215(a)(3) (rendering it illegal "to discharge or in any other manner discriminate against any employee" due to their participation in an FLSA proceeding). "The FLSA's "prime purpose . . . [is] to aid the unprotected, unorganized, and lowest paid of the nation's working population." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.8 (1945). These concerns are particularly salient when the putative class members may fear retaliation or inquiry into their immigration or citizenship status should they attempt to assert their rights. *See In re Reyes*, 814 F.2d 168, 170 (5th Cir. 1987) ("[I]t is well

15

established that the protections of the [FLSA] are applicable to citizens and aliens alike . . . whether the alien is documented or undocumented," and discovery into citizenship and alienage of plaintiffs is "completely irrelevant" and "could inhibit [plaintiffs] in pursuing their rights"). The court therefore sees no reason that notice of the right to be free from retaliation and inquiry into immigration status should not be included in the notice. *See, e.g.*, *Joaquin*, 2016 U.S. Dist. LEXIS 1666861 at *11 (approving notice informing recipients that inquiry into their immigration status, or retaliation due to immigration status, is prohibited); *Moore & Hien v. C & J Energy Servs.*, 2015 U.S. Dist. LEXIS 177871 at *18 (S.D. Tex. Dec. 8, 2015) (approving notice informing recipients that they cannot be discriminated or retaliated against for joining the lawsuit).

### IV. CONCLUSION

For the reasons given above, Plaintiffs' Motion for Conditional Certification of Collective Action and Notice to Class (Dkt. 14) is **GRANTED**.

Accordingly, **IT IS ORDERED** that, within fourteen days of the date of this order, Defendants shall provide to Plaintiffs' counsel a list of all current and former employees who worked as manual laborers and were paid an hourly or daily rate at any time during the three-year period before the filing of this lawsuit ("Class Members") including the individual's name, current or last known address, e-mail address, and telephone numbers. Defendants shall provide this information in usable electronic format (Word, Word Perfect or Excel).

**IT IS FURTHER ORDERED** that Plaintiffs may disseminate the Notice and Consent/Information forms attached to Plaintiffs' motion as Exhibit E (in both English and Spanish) to all Class Members via mail and email. Plaintiff may disseminate via mail and email a second copy of the Notice and Consent/Information forms reminding the Class Members of the deadline.

**IT IS FURTHER ORDERED** that Defendants shall distribute the Notice and Consent/Information forms attached to Plaintiffs' motion as Exhibit E (in both English and Spanish)

with paychecks to current employees within fifteen days after the date of this order or with the first paycheck thereafter.

**IT IS FURTHER ORDERED** that Defendants shall post the Notice and Consent/Information forms attached to Plaintiffs' motion as Exhibit E (in both English and Spanish) in a conspicuous place readily and routinely available for review by the Class Members at Defendants' place of business commencing ten days after the date of this order.

**IT IS FURTHER ORDERED** that the parties must confer within fourteen days after the entry of this order and file a proposed script for the telephone calls authorized by this order. Plaintiffs' counsel may thereafter contact the Class Members by telephone and must follow the script (in either English or Spanish). Plaintiffs' counsel may contact the Class Members by telephone, for these purposes, only once.

**IT IS FURTHER ORDERED** that Defendants shall not communicate by any means directly or indirectly about any aspect of this lawsuit with any Class Member until this lawsuit is concluded.

**IT IS FURTHER ORDERED** that anyone who wishes to join this action must return a consent form to counsel postmarked within sixty days after the date that Defendants provide to Plaintiffs the information described in this order. Counsel shall file the consent forms with the court.

**SIGNED** on February 17, 2017.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE